IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Joseph Hartsfield,

    Plaintiff,

v.

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

Case No. 2:09-cv-0276

JUDGE SARGUS

## ORDER

On April 14, 2010, the Court entered judgment sustaining the plaintiff's statement of errors and remanding this case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four. Plaintiff subsequently moved for an award of attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412. The Commissioner has opposed the motion, and plaintiff has replied. For the following reasons, plaintiff's motion for fees under the EAJA will be granted.

I.

The Equal Access to Justice Act, 28 U.S.C. §2412, provides, in pertinent part, that the Court shall award to a prevailing party other than the United States attorneys' fees and expenses "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

The party seeking an award of such fees and expenses is required to submit a fee application to the court within 30 days of the date that the judgment became final and non-appealable. The application must demonstrate that the party is a prevailing party and is eligible to receive a fee award. It must also document the amount sought, including an itemized statement from the attorney or attorneys involved, and must allege that the position of the United States was not substantially justified. The court is then required to determine, on the basis of the record, whether the position of the United States was substantially justified. Attorneys' fees are limited

1

to the rate of $125.00 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."

Once a petition has been filed alleging that the position of the United States was not substantially justified, the United States has the burden of demonstrating such justification. See Miller v. United States, 831 F. Supp. 1347, 1351 (M.D. Tenn. 1993) ("The burden lies with the government to demonstrate that its position was substantially justified ...."); Weber v. Weinberger, 651 F.Supp. 1379, 1388 (E.D. Mich. 1987) ("with respect to an application for attorney's fees the Government has the burden of showing that its position was substantially justified."); see also Howard v. Heckler, 581 F. Supp. 1231, 1233 (S.D. Ohio 1984). The question of whether the United States' position is substantially justified is determined based upon the standards set forth in Pierce v. Underwood, 487 U.S. 552 (1988). In Pierce, the Court concluded that the phrase "substantially justified" as used in the EAJA means justified "to a degree that could satisfy a reasonable person." Pierce, supra, at 565. As the Court noted, that test "is no different from the 'reasonable basis both in law and fact' formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue." Id., citing, inter alia, Trident Marine Construction, Inc. v. District Engineer, 766 F.2d 974 (6th Cir. 1985). An agency decision that is not supported by substantial evidence may still be one that has a reasonable basis in law and fact. Jankovich v. Bowen, 868 F.2d 867 (6th Cir. 1989). Consequently, this Court is required to apply the "reasonable basis in law and fact" test set forth in Trident Marine Construction to this application for attorneys' fees.

II.

In the Magistrate Judge's Report and Recommendation, to which the Commissioner did not object, the basis of the order of remand was explained in this way. The Commissioner had denied plaintiff's application for benefits in reliance on a vocational expert's testimony that, given certain limitations in plaintiff's residual functional capacity, plaintiff could still perform three specific jobs. The Administrative Law Judge, contrary to Social Security Ruling 00-4p, did not ask the expert if his testimony was consistent with the Dictionary of Occupational Titles. That was a problem in this case, because two of the three positions identified by the expert are

-2-

listed in the DOT as semi-skilled, but the Commissioner found plaintiff to be limited to the performance of unskilled work activity. The third job was described in the DOT as having a "reasoning level" of three or four, which might well be inconsistent with the finding that plaintiff was able to carry out only simple one- or two-step job instructions. Without further development of the administrative record, the Court could simply not resolve this dispute. The case was therefore remanded for that further development.

In arguing that his opposition to the plaintiff's statement of errors was substantially justified, the Commissioner contends that the administrative decision was reasonably defensible on several grounds. First, he argues that the three jobs at issue were only illustrative of the types of jobs available to plaintiff, and that the vocational expert testified that plaintiff could do up to 90% of the light work jobs in the economy. Second, he argues that it is not entirely clear that the DOT job numbers which, according to plaintiff, match the jobs identified by the expert, really do so, because no one asked the expert to supply the DOT numbers at the administrative hearing. Third, he argues that because the mail clerk job has an SVP of two, it is an unskilled job, and significant numbers of those jobs do exist in the economy. For these reasons, while the Commissioner apparently concedes that the remand ordered by the Court was appropriate, he disputes plaintiff's contention that his opposition to that remand was not substantially justified.

In his reply brief, plaintiff counters that none of these bases constitute substantial justification for the Commissioner's defense of the administrative decision. First, he notes that the Commissioner's argument completely disregards the fact that the ALJ did not comply with the applicable regulation, which couches the duty to inquire of a vocational expert about the compatibility of his or her testimony with the DOT in mandatory terms. Second, he points out that although the mail clerk job identified by the vocational expert is an unskilled position, the deficiency in the record concerning how the reasoning level of that job comported with plaintiff's ability to reason led the Court to reject, as unsupported by the record, the notion that plaintiff could perform this job, making the number of such jobs irrelevant. Plaintiff does not specifically address the issue about whether the Commissioner had a substantial basis for defending the administrative decision on the basis that the vocational expert's opinion about employability extended beyond the three specific jobs identified in his testimony.

This last contention is, at best, problematic. As a general rule, when a case proceeds to step five of the sequential evaluation process, a step at which the Commissioner has the burden to show that a claimant can perform jobs other than his or her past relevant work, the Commissioner must make "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs ...." O'Banner v. Secretary of H.H.S., 587 F.2d 321, 323 (6th Cir. 1978) (emphasis supplied); see also Richardson v. Secretary of H.H.S., 735 F.2d 962, 964 (6th Cir. 1984). Other courts agree. For example, in Haddock v. Apfel, 196 F.3d 1084, 1087 (10th Cir. 1999), the court held that "before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of *identified jobs* corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point." (Emphasis supplied). If this were not the case, the requirements of SSR 00-4p that the ALJ "ask about any possible conflict between [the vocational evidence] and information provided in the DOT" would be rendered largely moot, because there would be no specific jobs or job requirements about which such a comparison could be made, or such a conflict identified. Further, the Commissioner did not actually attempt to defend the administrative decision on this ground. His opposition to plaintiff's statement of errors contains only a single sentence, unsupported by citation to any cases, regulations, or rulings, which alludes to this argument. See Doc. #15, at 13. The memorandum in opposition to the EAJA fee petition is no more detailed or extensive when discussing this issue. Thus, this contention does not and did not provide a substantial basis for the Commissioner's litigation position.

The Court reaches a similar conclusion with respect to the argument that it was not necessarily the case that the DOT numbers supplied by plaintiff actually corresponded to the three jobs identified by the vocational expert. Again, it is worth emphasizing that it is not the claimant's burden to ask about conflicts with the DOT at step five of the sequential evaluation process. SSR 00-4p places that responsibility squarely on the ALJ. Since the ALJ did not discharge that burden, and no argument has been advanced that the ALJ did not violate the Ruling by failing to ask about the DOT, it is hard to view the silence of the record on DOT issues as a substantial basis for opposing a remand. Further, the assertion in the Commissioner's

-4-

memorandum in opposition to plaintiff's statement of errors, repeated in the brief on the EAJA issue, that the vocational expert "could have been indicating a broader group of jobs or jobs identified by other DOT numbers," see id., is nothing other than speculation unsupported either by anything in the administrative record or anything filed with this Court. Again, such speculation cannot be viewed as substantial support for opposing a remand on the DOT issue.

The third justification advanced by the Commissioner is that at least one of the jobs identified by the vocational expert (unlike the other two) was actually an unskilled job, so that it matched, at least superficially, one of the limitations imposed on plaintiff's residual functional capacity. Thus, according to the Commissioner, it was at least reasonable to argue that this job, standing alone, which existed in some numbers in the economy (750 in the local economy, and proportionally more in the regional and national economies), supported a finding that plaintiff could perform substantial gainful activity.

This argument does not stand up to close scrutiny. In his statement of errors, plaintiff identified an apparent inconsistency between the reasoning level of the mail clerk job and the reasoning level which the ALJ attributed to him. The question before the Court was not whether plaintiff might actually be able to do this job; it was whether the apparent conflict between the DOT and the vocational expert's testimony, occasioned by the ALJ's non-compliance with SSR 00-4p, could be resolved only through a remand for further development of the record in accordance with the governing law. The Commissioner's memorandum in opposition did not directly address this point, but rather argued that because the mail clerk job had an SVP of two, and SSR 00-4p recognizes such jobs as unskilled, there was no conflict. This argument completely failed to recognize that plaintiff never disputed that the mail clerk job was unskilled (making any issue about its SVP level irrelevant), but that the identified conflict was between the reasoning level of that particular job and the plaintiff's inability to carry out anything more than simple job instructions. Plaintiff was clearly correct in arguing that the skill level and reasoning level of a job are two different considerations, that the DOT treats them separately, and that a substantial question exists about whether an unskilled job with a reasoning level of 3 can be done by someone with plaintiff's cognitive limitations. The failure to address that argument or to analyze it in connection with a harmless error argument - which was the Commissioner's

-5-

response to the uncontroverted failure of the ALJ to follow SSR 00-4p - is also not reasonable.

The plaintiff has requested $3,445.00 in fees, which includes fees incurred in preparing and briefing the application for fees. The Commissioner has not argued that the amount of the requested fee award is unreasonable, and the Court does not find it to be so. Therefore, plaintiff will be awarded fees in that amount.

III.

For the foregoing reasons, the Court holds that the litigation position of the Commissioner was not substantially justified. Consequently, plaintiff's application for an award of attorneys' fees under the Equal Access to Justice Act (#20) is GRANTED. Plaintiff is awarded the sum of $3,445.00 in fees, to be paid within thirty days.

Date: 9-20-2010

Edmund A. Sargus, Jr.
United States District Judge